## 66907. GRIMES v. THE STATE.

QUILLIAN, Presiding Judge.

Douglas S. Grimes appeals his conviction of the possession and sale of marijuana in violation of the Georgia Controlled Substances Act. Detective Fred Marchmand of the Decatur Police Department received information from a confidential informant, who had given him reliable information in the past, that a drug sale would occur in the parking lot of the Kroger store on Church Street in Decatur on the evening of March 16. This was confirmed by information from two other informants. A black car was to bring drugs to a white frame house on Decatur Road across from the Pizza Hut. A red pickup truck would be in the front of the house. A red pickup truck, driven by a white male, was to deliver drugs to a black male in a white car in the Kroger parking lot. These two locations are approximately three blocks apart. Marchmand had received information prior to that time from other informants that this particular house on Decatur Road was involved in drug activities. He had personally staked out the same house, off-and-on, for the last two months but had observed no illegal activities. He had not been given any names as to who would

be involved in the drug sale but he had been given the red pickup truck and a tag number. The tag number was that of the defendant Grimes. The same informant had told him earlier that a drug sale would occur at the Kroger store parking lot on March 14. He staked out that location that night but did not observe any sale.

On the way to his stakeout position in the Kroger parking lot on March 16, Marchmand passed by the house on Decatur Road and saw a large black car enter the driveway. Two police units were across the street. They saw a black Mercury Monarch enter the driveway of the Grimes house and a white male get out of the car and take a large plastic bag out of the trunk and take it into the house. The bag appeared to have something in it as the man used both hands to carry it. The man stayed in the house for approximately 15 minutes. Two white males exited the house. One man carried a cardboard box and placed it in the back of the red pickup truck and departed in the direction of the Kroger store. He was followed by Investigator Crowder. The man who had been driving the Mercury had an empty plastic bag which he placed in his car and left. He was apprehended by the remaining officers and identified as John Kucharski — a co-defendant. When he was arrested there was a 9 millimeter revolver, loaded with hollow-point bullets, laying beside him. He had a permit to carry the weapon.

Detective Marchmand saw a white Buick Electra, driven by a black male enter the Kroger parking lot. A few minutes thereafter he saw a red pickup truck enter the parking lot — being followed by Investigator Crowder, and park beside the white Buick. The black man left his car with a brown paper bag in his hand and entered the truck. He stayed for only one or two minutes and left — picking up the cardboard box from the rear of the truck and placing it in his car. The police moved in to apprehend the suspects. Police cars pulled in front and back of the Buick and the driver — Percy West, was arrested. The box contained approximately 14.6 pounds of marijuana. Grimes fled in the pickup truck. He was pursued by two officers in different cars. A chase ensued through Decatur and out onto Interstate 285 and finally the Stone Mountain Freeway where Grimes was arrested. No money was found in the truck.

Grimes was taken to police headquarters and advised of his Miranda rights. He told Detective Kersey where he had thrown the money from his truck during the chase. The officers went to that location — the intersection of I-285 and the Stone Mountain Freeway and recovered $5,190.00. Defendant Grimes brings this appeal. *Held:*

1. Error is asserted in the ruling of the court "denying appellant's Motion for Directed Verdict of acquittal because the evidence was insufficient as a matter of law to sustain a conviction . . ."

First, counsel has not cited us to that portion of the record — 1277 pages in length, in which he made such a motion. Our research reveals no motion for directed verdict was made on behalf of Grimes but was made by his co-defendant Kucharski. Secondly, the evidence is more than sufficient to enable any rational trier of fact to find the existence of the offense charged. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560). Percy West, the man apprehended with the marijuana, testified for the State that he purchased it from Grimes. The sale was observed by four officers. Grimes was pursued by three officers until he was captured after a chase — at times exceeding 100 miles per hour. He was advised of his rights and directed officers to the place where he had abandoned the money paid to him by West. The general grounds are without merit, and it would not have been error to deny a motion for a directed verdict of acquittal.

2. We find no abuse of discretion of the trial court in refusing to sever the trial of Grimes from that of Kucharski. Kucharski was seen taking a large plastic bag into Grimes' house and Grimes and Kucharski leaving shortly thereafter. Grimes exited the house with a cardboard box which was later found to contain 14.6 pounds of marijuana, and Kucharski was seen leaving with the empty bag which was placed in his car. Examination of the bag after his arrest showed it to contain residue of marijuana. Grimes was followed from his house to the point of sale of the marijuana to West by an officer. Thereafter the sale by Grimes to West was observed by four police officers. This was one continuous transaction.

"A motion for severance [of defendants] is a matter committed to the sound discretion of the trial court. [Cit.] The ruling of the trial court is subject to reversal only for an abuse of that discretion. [Cits.] In weighing for an abuse of discretion, the appellate court must satisfy itself that the appellant has suffered prejudice of a substantial nature. [Cits.] The burden is on appellant to make a clear showing of prejudice [cit.]; that the prejudice was harmful [cit.]; and that the harm could have been avoided by a separate trial." *Montgomery v. State,* 156 Ga. App. 448, 452 (275 SE2d 72); accord: *Baker v. State,* 238 Ga. 389 (2) (233 SE2d 347).

There were only two defendants, and the evidence relating to Kucharski ceased before the evidence incriminating Grimes started. Thus, we find no confusion of parties, or of the evidence, as to each defendant. We have found no antagonistic defenses. See *Cain v. State,* 235 Ga. 128, 129 (218 SE2d 856). As to the claim that one defendant would have called the other defendant as a witness — we can find no prejudice to Grimes as any evidence Kucharski may have offered could not rebut the testimony that Grimes was seen leaving his house with a cardboard box by two officers and four officers saw

that box transferred to West. The box contained 14.6 pounds of marijuana. West testified he purchased the marijuana from Grimes. *Stevens v. State,* 165 Ga. App. 814, 816 (302 SE2d 724). Grimes told an officer he threw the money out of the car at the intersection of I-285 and the Stone Mountain Freeway. The money was found where he said he threw it. We have found no prejudice to Grimes from the fact that Kucharski was arrested and found to be in possession of a weapon — for which he had a permit. Although the weapon was loaded with hollow-point bullets, the officer testified that the scoring of the bullet tips appeared to have been done by the manufacturer and that he was not aware of their possession being in violation of any law. In sum, defendant has shown no prejudice, and we can discern none. We find no abuse of discretion in the denial of defendant's motion for severance of defendants. *McDonald v. State,* 156 Ga. App. 143 (5) (273 SE2d 881).

3. As stated above, we find no prejudice to Grimes from evidence admitted against Kucharski that a gun, weapon clip, and gun case, were found beside him in his car at the time of his arrest. "It is well settled that evidentiary facts pertaining to '(t)he flight of the accused, where and when arrested, whether he resisted or not, how he was armed, and all the circumstances attending his arrest, are admissible to be considered by the jury for what they are worth.' [Cits.]" *Newsome v. State,* 149 Ga. App. 415, 416 (254 SE2d 381); accord: *Clements v. State,* 226 Ga. 66 (1) (172 SE2d 600); *Morgan v. State,* 229 Ga. 532 (2) (192 SE2d 338); *State v. Luke,* 232 Ga. 815, 816 (209 SE2d 165); *Bixby v. State,* 234 Ga. 812 (1) (218 SE2d 609).

4. The defendant contests the admissibility in evidence of testimony of Detective Kersey that Grimes told him where to find the money he received from West in payment for the marijuana. Grimes testified that he repeatedly asked for an attorney but the officers formed a ring around him, ignored his request for a lawyer, and continued questioning him until he told them what they wanted. He stated that he was threatened with the forfeiture of his truck and his carpenter tools in the truck — with which he made his living, if he did not cooperate. He said he was promised there would be no forfeiture of his truck or tools, he would not be charged with any traffic offenses for his attempted escape, and he would be permitted to have a low bond if he confessed. Detective Kersey's testimony conflicted with this version of the events preceding Grimes' statement. Kersey stated that he advised Grimes of his Miranda rights — including his right to an attorney. Grimes did not request a lawyer and told him where he had thrown the money. After he secured the admission Grimes started crying and stated that he feared for his life and that of his family and requested an attorney. Kersey stopped the questioning

and recovered the money. He was positive that the admission came before the request for an attorney. Grimes was just as positive that the request for the attorney came before the admission. The trial court decided the conflict against the defendant and admitted Kersey's testimony.

"Once a trial court determines that a statement was freely and voluntarily given in compliance with the requirements of Jackson v. Denno, 378 U. S. 368, the court may properly allow the statement into evidence. [Cits.]

"Fact findings and credibility findings in regard to admissibility of such a statement based on voluntariness made by a trial judge must be accepted by this court unless such determinations are clearly erroneous. [Cit.]" *Hurt v. State,* 239 Ga. 665, 669 (238 SE2d 542); accord: *Griggs v. State,* 241 Ga. 317 (5) (245 SE2d 269); *Natson v. State,* 242 Ga. 618, 623 (250 SE2d 420). This includes any issue concerning whether a request for an attorney came before or after a statement. *Gates v. State,* 244 Ga. 587 (1) (261 SE2d 349). The trial court's finding of admissibility of the defendant's statement is not clearly erroneous. This enumeration is without merit.

5. The trial court did not err in refusing to require the State to identify the informant who had given information of the pending drug sale to the police. Public policy in Georgia favors nondisclosure of the identity of an informant in the interest of the free flow of information about criminal activity. *Keith v. State,* 238 Ga. 157, 158 (231 SE2d 727). In *Thornton v. State,* 238 Ga. 160 (231 SE2d 729), the Supreme Court thoroughly examined the question of whether or not the identity of an informant had to be revealed. They held that if the informer is a "pure tipster" his identification is not required. They reasoned that if he was not a witness nor a participant to the actual sale that any evidence he had to offer would be pure hearsay and inadmissible. 238 Ga. at 165. "Generally speaking, an accused's right to disclosure depends upon whether such disclosure is material to this defense . . ." 76 ALR2d 262, 270. Disclosure could be material to the defense where the informant is a witness or a participant, or entrapped a defendant into committing a crime he would not otherwise have committed. Id. No claim of entrapment was presented by Grimes. Detective Marchmand testified that he did not know West or Kucharski prior to this incident, and the only remaining participant or witness — other than the police, was the defendant. Accordingly, the informant had to be a tipster. We have found no evidence which could have been possessed by the informant which would have been favorable to a determination of defendant's guilt or punishment which required disclosure of the informant's identity. *Mooney v. State,* 243 Ga. 373 (8) (254 SE2d 337).

6. The defense counsel moved for a continuance as the trial was nearing its conclusion on the ground that two of his subpoenaed witnesses — David Craig and his wife, could not appear. Mrs. Craig had been in an automobile accident and was hospitalized with facial and head lacerations. She was listed in "fair condition" but there was "no projected date of recovery . . ." Her husband was with her at the hospital. Their testimony would show that "Mr. Craig was involved several times with Mr. West in terms of drug deals." This would be impeaching testimony.

A motion for continuance based on absence of a witness is addressed to the sound discretion of the trial judge and an appellate court will not interfere unless it is clearly shown it has abused its discretion. *Alderman v. State,* 241 Ga. 496 (2) (246 SE2d 642). The moving party must make a showing of the requirements set forth in OCGA § 17-8-25 (formerly Code Ann. § 81-1410), i.e., the witness is absent, he has been subpoenaed, he does not reside more than 100 miles from the place of trial, his testimony is material, the absence is not with permission of the applicant, his testimony can be procured by the next term of court, the facts expected to be proved, and that application is not made for the purpose of delay.

First, the application was made after the State had closed and no showing was made that the witnesses would be present for the next term of court. Secondly, it appears that the testimony desired was that of David Craig and his drug deals with the State's witness West — and no valid showing was made as to why he could not appear. Mrs. Craig's testimony would have been cumulative of her husband's testimony. Where the missing testimony is cumulative and would not contradict the testimony of the State's witness as to any controlling point, it is not error to refuse a continuance. *Varnadoe v. State,* 67 Ga. 768 (2). Further, where the missing witness' testimony is solely impeaching, as in the instant case, and the judgment complained of was authorized by evidence other than the testimony sought to be impeached, it is not an abuse of discretion to refuse the continuance. *Freeman v. City of Atlanta,* 12 Ga. App. 564 (77 SE 891); *Smith v. State,* 13 Ga. App. 32 (1) (78 SE 685); *West v. State,* 68 Ga. App. 56 (1) (22 SE2d 115). We find no abuse of discretion.

7. We have thoroughly examined the remaining enumerations of error and found them without merit.

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED OCTOBER 11, 1983 —

*David R. Hunter, Walter M. Henritze,* for appellant.

*Robert E. Wilson, District Attorney, Thomas S. Clegg, Michael M. Sheffield, Assistant District Attorneys,* for appellee.