## 69377. PRIDGETT v. THE STATE.
### (326 SE2d 581)

BIRDSONG, Presiding Judge.

Freddie Pridgett was convicted of armed robbery of a convenience store in Columbus, Georgia, and sentenced to twenty years imprisonment. On appeal he enumerates essentially two errors. *Held*:

1. Appellant complains the evidence is insufficient to support the conviction. We disagree. The proprietress of the convenience store identified appellant as the armed robber from a photographic lineup shortly after the crime. She identified him in court, saying that while he had held a gun to her chest, she had plenty of time to observe him and would never forget his face. After the robbery, she showed the police a magazine which the robber had handled just before the act, and appellant's fingerprints were found on the magazine. Appellant admitted he had been in the store on or about the day of the crime but contended he had only had a tiff with the proprietress concerning profane language he used to describe the magazine. Considering that credibility of witnesses is purely a jury question, this evidence is sufficient to convince any rational trier of fact of the appellant's guilt beyond a reasonable doubt. *Boyd v. State*, 244 Ga. 130, 132 (259 SE2d 71); *Turner v. State*, 151 Ga. App. 169, 170 (259 SE2d 171).

2. In enumerations two and three, appellant complains that his non-receipt of the fingerprint report violated his right to review scientific reports pursuant to OCGA § 17-7-211, prohibited introduction of the report as evidence, and wrongly forced the appellant to confess that he had been in the store. However, the trial court heard the parties and ruled as a matter of fact that the state's attorney had properly mailed the reports to defense counsel and had done all she reasonably could do to "furnish the defendant with a copy" of the report. OCGA § 17-7-211 (c). In fact, the defense attorney apparently already knew of the report and was not surprised by its admission at trial. Finally, we do not agree that the admission of the fingerprint analysis "forced" appellant to admit he was in the store, where the choice to so testify was obviously his own.

*Judgment affirmed. Carley, J., concurs. Beasley, J., concurs specially.*

DECIDED JANUARY 31, 1985 — 

Fred L. Pridgett, *pro se.*
H. Haywood Turner, for appellant.
William J. Smith, District Attorney, Tasca W. Badcock, Assistant District Attorney, for appellee.

BEASLEY, Judge, concurring specially.

With respect to Division 2, the law provides that the defendant "shall be entitled to have a complete copy of any written scientific reports . . ." upon proper request; it requires the prosecution "to furnish" the defendant with a copy. OCGA § 17-7-211. Because of the accused's entitlement, which grows out of the weight given such reports as evidence against a person due to society's deference to the results of scientific scrutiny, the statute puts a burden on the prosecution to insure that defendant gets them. The idea is that if the prosecution intends to use these reports in trial as evidence against defendant, the latter should be given a fair opportunity to test the accuracy of the scientist's damaging conclusion and to counter that conclusion with scientifically arrived at conclusions contrary to it, if he can.

Obviously, this fair play objective is not sufficiently met by the simple mailing of the report to defendant's counsel. It may never get there. It is only met when the report is "furnished," when defendant (or his counsel's office) gets it. If the prosecution wishes to rely on the mails as a vehicle to effect delivery, the prosecution will have to bear the risk of completion of the task which the mail (a courthouse interdepartmental delivery system in this case) is entrusted with. "To furnish" means "to accomplish; insure; to provide for; to provide what is necessary for; to satisfy the needs of; equip; fit out or fit up; to supply; give; afford . . ." Webster's New International Dictionary, Second Edition, Unabridged.

In the instant case, there is no question that the report was put into the outgoing mailbox in the prosecutor's office and that the public defender had no record or knowledge of receiving it.

What makes the admission of the report into evidence not reversible error here, assuming it was error, is that defendant did not deny going into the store and handling the magazine on which the fingerprint report was based. Thus the lab's fingerprint analysis report was merely cumulative of defendant's own testimony. If he had been "furnished" the report earlier, it is difficult to comprehend how his testimony or defense could have changed, particularly since counsel asserts that the report in large measure persuaded defendant to admit that he had been in the store. He did not contend that he was *not* there or that the report was faulty or that a scientific examination by a different fingerprint analyst would have resulted in a different finding.